HARRY N. BAETJER, ET AL., Appellants, v. REGISTRAR OF
PROPERTY OF CAGUAS, Respondent.

No. 1053. Submitted June 12, 1939.—Decided November 10, 1939.

*Fiddler, Córdova & McConnell* for appellants. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

H. N. Baetjer, C. K. Bowie, A. H. S. Post, H. E. Boyce, H. E. Henneman, J. A. Stevenson and L. Naetzker, trustees collectively known as Eastern Sugar Associates, a trust, have appealed to this Court from a decision of the Registrar of Caguas, of May 15, 1939, refusing to record the cancellation of a certain mortgage. They allege:

"1. That on April 27, 1939, the appellants presented in the Registry of Property of Caguas deed No. 33, executed on April 21, 1939, before Notary Guillermo E. González in regard to the protocolization of a deed executed in the City of Montreal, Dominion of Canada, on July 15, 1938, before Notary Mister Robertson Welton Gibb, by the Montreal Trust Company in favor of The Porto Rico Railway Light & Power Co.

"2. That in said deed . . . there was cancelled, in regard to certain properties . . . a mortgage constituted by the Porto Rico

Railway Light & Power Co. in favor of The Montreal Trust Co. by deed No. 30 executed on June 9, 1917, to secure the sum of $5,000,000 principal, annual interest at 8 per cent plus $100,000 to cover the costs, expenses and attorney's fees.

"3. That the appellants presented in the Registry of Property deed No. 33 . . . with the sole purpose of cancelling the mortgage referred to in regard to certain realty, which was appellants' property.

"4. That on May 15, 1939, the respondent registrar refused to record . . . on the grounds alleged in his decision" . . . to wit:

". . . that it appears from the registry that pursuant to an agreement of the Executive Committee of the Montreal Trust Co. of January 16, 1917, it was declared that the mortgage should be understood as executed in favor of the Holders of the bonds, represented by said Montreal Trust Co., as the mortgage was constituted, and the Montreal Trust Co. having appeared in the preceding deed of cancellation to cancel the mortgage constituted to secure the mortgage bonds, it not appearing from the same deed of cancellation that said company is the holder of such mortgage bonds nor that such mortgage bonds are duly cancelled in accordance to law; with the defect of not having credited the holding of the mortgage bonds by the Montreal Trust Co. in the sense that the same have been cancelled by the notary according to law."

Appellants further allege that they feel aggrieved by the decision and in a separate pleading state *in extenso* their reasons for it, which reasons are substantially as follows:

"The reading of the terms of the bond, of the mortgage and of the record in the registry which are accompanied herewith, clearly discloses that the mortgage was not constituted to individually secure each bond, thus changing them into mortgage bonds, as provided by Section 153 of the Mortgage Law . . . (it being) the intention of the parties . . . to create the mortgage directly in favor of the trustee and to create a trust over the mortgage whose beneficiaries are those who turn out to be holders of the bonds. Thus, the security for the bonds is the agreement of the trustee to constitute the mortgage in favor of the holders of the bonds. The trustee has certain powers and obligations expressly granted and imposed upon him in the mortgage deed and the . . . holder of the bond knows that he does not acquire a mortgage in his favor but a certificate of a mortgage in favor of a trustee.

" *      *      *      *      *      *      *

"The purpose entertained in leaving in the hands of a trustee the power to cancel the mortgage is a sound one. This type of mortgage is used by large corporations and public service companies which are in need of making loans for large amounts under conditions of time and interest that cannot be obtained from banking institutions. A company which issues bonds for $5,000,000 divided in bonds of $100 each and which secures them with a mortgage over all its real and personal property, should not be bound, every time that it deems it convenient to its better interests to dispose of part of its property, to obtain the unanimous consent of fifty thousand bond holders in order that the conveyance be effected free of encumbrances. To avoid this, a trustee is appointed in the deed; a mortgage is constituted in his favor and he is granted the faculty to cancel it. Usually banking institutions of high economic solvency and whose commercial standing in the community is a guarantee for the investment which the future bond holder may make are appointed trustees."

Let us examine the document.

██ It appears from the mortgage deed executed before Notary Public P. Amado Rivera on June 29, 1917, in this city of San Juan, that the Porto Rico Railway, Light & Power Co., owner of the properties which today belong to the appellants, as well as of others, mortgaged them to secure obligations to bearer to be issued for the amount of five million dollars in the manner and under the conditions set forth in the document.

Charles S. Jenner appeared on behalf of the Company, and Richard Gilmore Allen as agent for the Montreal Trust Co., subsequently designated as the Trustee. The powers and faculties of the appearing parties are embodied in the deed which contains a complete description of the mortgaged properties, among them, properties Nos. 58, 50, 60, 61 and 62 which are the ones afterwards sold by the Company and which today belong to the appellants.

On page 53 of the document we find the following:

"That it is the intention of the parties hereto that the said mortgage or morgages to be executed by the said Railway Company in favor of the said Trustee in accordance with the forms and requirements of the laws of Porto Rico shall be registered in the name of

the said Trustees in Porto Rico and shall be held as security for the payment of the said bonds issued hereunder, and the said additional sum of one hundred thousand dollars and that the sa'd bonds, through the medium of this mortgage and of each and every mortgage and other instrument supplemental hereto which may be executed as herein provided, are to be secured in accordanc with the laws of Porto Rico by all the property, rights and franchises now owned or hereafter acquired by the said Railway Company which may be lawfully mortgaged under said laws.''

It is then stated:

''That in consideration of the sum of one dollar paid by the Trustee (the receipt of which, after due notice as required by law in such cases, is acknowledged by the said Railway Company), and in order to secure the payment of the principal and interest on all bonds . . . Charles S. Jenner, the party of the first part hereto, in his capacity as Vice President of the Railway Company and pursuant to authority conferred upon him by the said Railway Company as aforesaid and on behalf of the said Company, has executed and delivered these presents and has thereby mortgaged in favor of the said Trustee, its successors and assigns, forever, all of the property, rights and franchises hereinbefore described under letters . . . Unto and to the use of the said Montreal Trust Company as trustee, its successors in the said trust, their and each of their assigns, upon and for the trusts, intents and purposes hereinafter expressed of and concerning the same and subject to all the rights, reservations exceptions and conditions herein set forth. And it is hereby agreed and declared that the bonds to be issued under this Indenture shall be bonds of the denomination of one hundred thousand dollars each. And that it is hereby agreed and declared that the proposed form of the said bonds and of the certificate of the Trustee thereon are to be, except as to the serial number of said bonds, substantially in the following form, to wit.''

The form of the bond is transcribed in full. We quote from it:

''This bond is one of a series of bonds of one hundred thousand dollars ($100,000.00) each of like tenor and effect issued and to be issued for an aggregate principal sum not exceeding five million dollars ($5,000,000) under and in pursuance of and all equally secured by and subject in all respects to the terms of a mortgage in trust . . . This bond is subject to the terms of the said mortgage,

which is hereby referred to for descriptions of the mortgaged premises and the nature and extent of the security, the rights of the holders of the bonds secured by it and the terms and conditions under which said bonds are issued and which rights, terms and conditions are made part of this bond.''

Then, in page 64, the Trustee states:

''The Trustee accepts the trust herein created and convenants and agrees that it will hold, this mortgage and any and all mortgages or other instruments duly executed and delivered to it by the said Railway Company at any time or times hereafter together with all property, rights, and privileges thereby secured to the trustee, in trust, nevertheless, for the security, use and benefit of the holders of the bonds of the Railway Company to be issued under the terms of this mortgage, and as trustee for the holders of the said bonds, and of the legal representatives, successors and assigns of the said bondholders; and it hereby covenants and agrees to and with the said Railway Company and with the holders of the said bonds, that in the execution of this trust and in the foreclosure of this mortgage or of said other mortgages or instruments and in the management, disposal or conveyance of the property and premises covered thereby and in the disposition of the proceeds and profits arising or to arise from any sale to be made as herein contemplated, or otherwise, the said trustee will be governed by the stipulations of this mortgage.''

The quotation above is contained in the first Section. In the second the following is stated, among other things:

''The object and intention of this mortgage is to create, under and in accordance with the laws of the Island of Porto Rico, a mortgage, charge or lien (subject only as aforesaid) in favor of the said Trustee upon ALL AND SINGULAR the hereinbefore described property, . . .''

The third reads in part:

''The bonds to be secured by this mortgage shall be without coupons and shall bear date the first day of July, A, D., nineteen hundred and sixteen and shall be for the sum of one hundred thousand ($100,000) dollars each and numbered consecutively. The said bonds shall from time to time be executed by the said Railway Company as in this mortgage provided. They shall be signed by the President

or Vice-President of the said Railway Company and the Corporate seal of the Company shall be thereunto affixed and attested to by the signature of the Secretary of the said Company.''

In the fifth it is stated in part:

''The said Railway Company shall have the right to redeem any part of the bonds issued hereunder at any time before their maturity at the par value of the bonds and a premium of ten per cent together with accrued interest thereon up to the time fixed for said redemption . . . Upon presentation to the Trustee of all of said authorized issue of bonds which at the time shall have been issued and outstanding in case all of the said bonds shall have been duly called for redemption as aforesaid, then, upon presentation of portion thereof and upon payment by the said Raiway Company to the Trustee of the amount necessary for redemption thereof as aforesaid and the Trustee having credited to such of said bonds as shall not have been presented for redemption the redemption price thereof at the rate aforesaid and the interest thereon, the Trustee shall cancel and discharge this mortgage and deed of trust as fully and to the same effect as if the total issue of the said bonds had been duly paid by the said Railway Company at the maturity thereof. All bonds redeemed under this clause shall be forthwith cancelled by the said Trustee.''

The eighth states in part:

''These presents are upon the express condition that, if the said Railway Company shall well and truly pay to the holders of the said bonds the amount of such bonds and interest as same shall respectively become due and payable and shall also pay as aforesaid all rates, taxes and charges whatsoever payable upon or in respect of the said mortgaged premises and shall observe and perform the conditions herein contained, then these presents shall cease and shall be utterly null and void and the mortgaged premises shall revert to and revest in the said Railway Company without any acknowledgment of satisfaction, release, acquittance, reconveyance, re-entry or other act or formality whatever. But in such case and whenever the said bonds and interest thereon as aforesaid shall have been paid and satisfactory evidence shall have been given to the Trustee of such payment it shall nevertheless be the duty of the Trustee at the expense of the said Railway Company, to execute, acknowledge and deliver to the said Railway Company upon demand full releases and

reconveyances of the mortgaged premises not lawfully disposed of under the trusts and powers herein contained.

\* \* \* \* \* \* \*

"The Trustee shall also from time to time release from the lien hereof or thereof any part or parts of the property subject to these presents or to any further or supplemental mortgage or other instrument, whenever the said Railway Company shall cause a deposit to be made with the Trustee of money equal in amount to the portion of said mortgage moneys and expenses apportioned to such part or parts of the property of the mortgaged premises by these presents or by any such further or supplementary mortgage or upon the deposit with the Trustee as aforesaid of such less amount as shall be shown to be the value of the property so to be released by the joint affidavit of the President and Treasurer of the said Railway Company or at the discretion of the Trustee by the affidavit of one or more competent and disinterested persons selected by it and paid by the said Railway Company; and the Trustee shall further release any portions of separate parcels hereby or by any further or supplemental mortgage or other instrument described, upon payment of the value of said portion, fixed by affidavit as aforesaid."

And finally the powers of the trustee are determined in Section 10 as follows:

"The Trustee may at any time and from time to time with the concurrence of the said Railway Company and with or without the express approval of the bondholders or any of them as in the uncontrolled discretion of the Trustee shall seem wise:

"(a) Sanction the sale or release of any part of the mortgaged premises, and accept as consideration or part consideration therefor, bonds, stocks or other securities of any Company;

"(b) Sanction any modification or compromise of the rights of the bondholders or of the Trustee against the Company of against its property or of the mortgaged premises, or of any them, whether such rights shall arise under these presents or otherwise;

"(c) Assent to any modification or variation of the provision contained in these presents which shall be proposed by the said Railway Company or recommended by the Trustee and execute any deed embodying the same to supplement these presents;

"(d) Sanction of any scheme for the reconstruction of the said Railway Company or for its consolidation with any other Company or the substitution of any other Company or corporation as the

debtor to the bondholders, and may authorize all such acts, assurances and things to be done as may be necessary for carrying such scheme into effect;

"(e) Accept any other property or securities instead of the bonds and in particular any other bonds or debenture stock of the said Railway Company and give the same preference over the present issue."

These being the terms of the original mortgage contract, could the trustee execute the deed of cancellation involved in the manner in which he did?

Said deed, protocolized in Puerto Rico, was executed before a notary public of the City of Montreal, Dominion of Canada, on July 15, 1938, by the Montreal Trust Co., represented by its Assistant General Manager, F. G. Donaldson, it being stated therein:

"*First*.—That Porto Rico Railway, Light & Power Company has represented that it is the owner of the following properties: (Sixty nine properties are herein described, among which figure those numbered 58, 50, 60, 61 and 62 herein involved.)

"That the properties hereinbefore marked 1 to 69 inclusive are mortgaged in favor of the said Montreal Trust Company, to secure the payment of the principal, interest with deed number thirty (30) executed at San Juan, Puerto Rico, before Notary Public Pedro Amado Rivera, on June twenty-ninth, nineteen hundred and seventeen, a copy of which was duly inscribed in the Registry of Property of San Juan and Caguas, Puerto Rico, the following amounts having been allocated to the properties mentioned in this paragraph: (The amounts are specified.)

"*Third*.—That the aggregate sum allocated and apportioned to said properties under said mortgage deed is therefore the sum of one million sixty-one thousand eight hundred fifty dollars ($1,061,850) of principal and twenty one thousand two hundred thirty seven dollars ($21,237) of expenses.

"Fourth.—That the said Porto Rico Railway, Light and Power Company has requested the Montreal Trust Company to release said properties from that part of the mortgage apportioned and allocated to them according to the deed mentioned hereinbefore and the said Montreal Trust Company having agreed to comply with the said request does hereby execute said release in accordance with the following terms and conditions:

"A. Montreal Trust Company, in consideration of the sum of One Million sixty one thousand eight hundred fifty dollars of principal ($1,061,850) and Twenty one thousand two hundred thirty seven dollars ($21,237) of expenses, Canadian currency, the part of the total amount secured by the said mortgage specifically allocated therein to the properties designated 1 to 69 inclusive, hereinbefore to it paid by Porto Rico Railway, Light and Power Company prior to this act, hereby cancels, releases and discharges, the said mortgage mentioned in preceding paragraph marked *First*, in so far and in so far only as said mortgage encumbers the said properties.

"B. Montreal Trust Company hereby consents that the RELEASE AND CANCELLATION of the Mortgage in its favour mentioned and described above be inscribed or registered in the proper registries of properties of Puerto Rico as to the immovable property described herein.

"Montreal Trust Company accepts and approves the present instrument in all its parts, binding itself, its successors and assigns to be and abide that which is herein set forth."

This being so, from the totality of the transaction, appears, in our opinion, the power of the trustee to effect the cancellation; and consequently the corresponding record of the same should be made in the registry of property.

It is true that Section 82 of the Mortgage Law provided in its final part:

"Records made to secure sums represented by instruments payable to the holders thereof can not be cancelled if it is not possible to establish in the registry the extinction of all the obligations secured, unless a true copy of the decree of the court declaring the extinction of such obligations is presented.

"In the case mentioned in the preceding paragraph, before the issue of the decree by the court, four calls shall be made upon persons who may have a right to oppose the cancellation, in the form of public notices and advertisements in the official periodicals, the term of six months for appearance being fixed in each."

And that at present, as amended by Act No. 22 of 1923, page 218, it orders that:

"Records made to secure sums represented by negotiable paper, to bearer or by endorsement, shall be canceled upon presentation of an

instrument executed by the persons who may have collected the credits, which instrument must set forth that the negotiable paper to bearer or by endorsement was canceled at the time of its execution. If all or any of such papers shall have been lost, such records may be canceled only by court order showing that final judgment has been rendered and obtained through regular procedure under the Code of Civil Procedure, holding that such obligations have been extinguished.''

But these provisions were enacted in contemplation of the cases where the mortgage is constituted to directly secure obligations to bearer, and not to cover those where said obligations are secured by constituting the mortgage in favor of a trustee enjoying the powers granted in this case, all this appearing not only from the mortgage deed itself but from each of the obligations thus secured.

The following are principles of law acknowledged by the jurisprudence: ''That which has been agreed upon is the law of the contract among the parties and their successors''; that ''agreements must be complied with in the manner executed''; that ''in interpreting contracts, solutions should be sought and not avoided, which tend to uphold them''; and that ''in construing contracts, their essential clauses should be considered with preference to the names assigned to them by the contracting parties.'' Scaevola. Código Civil.—Apéndice 2—52 et seq.

If we should try to forcedly apply the precepts of the Mortgage Law on cancellation of mortgages constituted to secure amounts represented by negotiable paper payable to bearer to a case such as the instant, where a trustee with the powers and obligations which we know intervenes, this being known to those who acquire said commercial paper in the open market, we would change the nature of the transaction or render it difficult by exacting the fullfilment of something which was created and enacted to protect interests which in this case do not run the risk which the legislature had in mind and which prompted it to action.

Having arrived at the above stated conclusion, the decision appealed from should be reversed and the cancellation requested ordered.